UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN TAYLOR a/k/a QADIR<br><br>Defendant. | Criminal Action<br>No. 06-00699-3 (CPO)<br><br>OPINION |

**O'HEARN, District Judge.**

Defendant is a federal prisoner currently incarcerated at FCI Allenwood, in White Deer, Pennsylvania. He is proceeding *pro se* with a Motion for Reduction of Sentence Under the First Step Act, 18 U.S.C. § 3582 (c)(1). (ECF No. 175.)[1] For the reasons stated in this Opinion, the Court will deny the Motion.

## I.   BACKGROUND

This case arises from a Superseding Indictment charging Defendant and Co-defendant Steven Gantt with thirteen counts of armed bank robbery and other related charges. (ECF No. 48; PSR ¶ 2.) Defendant committed the first of these crimes less than one year after beginning a two-year term of supervised release that had been imposed for prior offenses committed in the Middle District of Pennsylvania. (PSR ¶¶ 34, 151, 160, 164.) After a jury trial[2] held before the Honorable

---

[1] Because Defendant has prior related habeas matters, for the sake of clarity, references to "ECF" without additional reference to the case number are references to Crim No. 06-00699-3-CPO.

[2] After a mistrial in February 2008, a second trial took place in March 2008. (ECF Nos. 101 & 113.)

Robert B. Kugler (Ret.) in March 2008, Defendant was convicted on all counts charged against him. (ECF Nos. 139 & 151.)

On June 25, 2008, Judge Kugler sentenced Defendant to an aggregate term of 1,380 months' imprisonment, followed by three years' supervised release. (ECF No. 151 at 3.) Restitution in the amount of $121,598.95 was also ordered, as was a Special Assessment in the amount of $1,300. (*Id*. at 1, 5.) Defendant appealed his conviction which was affirmed by the Third Circuit on June 14, 2010. (ECF No. 162.)

In September 2011, Defendant filed his first Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (*Taylor v. United States*, Civ. No. 11-5367, ECF No. 1 (D.N.J. filed on Sept. 19, 2011)), alleging ineffective assistance of counsel and discovery violations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).[3] (*Id*. at 4–5.) On December 14, 2015, Judge Kugler denied Defendant's Motion on the merits. (*Id*., ECF Nos. 23 & 24.) On December 15, 2015, the court entered a separate Order denying a Certificate of Appealability. (*Id*., ECF No. 25.) Defendant sought reconsideration (*Id*., ECF No. 26) which was denied. (*Id*., ECF No. 35). Defendant appealed these rulings and on October 3, 2016, the Third Circuit denied a Certificate of Appealability. (*Id*., ECF No. 37.)

In June 2016, Defendant filed his second Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, this time seeking relief under *Johnson v. United States*, 576 U.S. 591 (2015).[4] (*Kevin Taylor v. United States*, No. 16-cv-3194 (D.N.J. filed on June 3, 2016) (ECF No. 1)). This motion was summarily dismissed for failure to use the proper forms. (*Id*., ECF No. 2.)

---

[3] *Brady* held the Government must not suppress evidence that is favorable to the defense and is material to guilt or punishment. 373 U.S. at 87.

[4] *Johnson* held "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 576 U.S. at 606.

Defendant refiled (*Id*. at ECF No. 3) and shortly thereafter, submitted an Amended Motion under § 2255 in which he again alleged due process violations under *Johnson*. (*Id.*, ECF No. 5 at 7). Because Defendant never obtained permission to file a second/successive § 2255 motion, the district court transferred the motion to the Third Circuit Court of Appeals, pursuant to 28 U.S.C. § 1631. (*Id*., ECF No. 14 at 3.) Permission to file the motion was granted (*Id*., ECF No. 15-2) and on September 27, 2021, the motion was denied (*Id*., ECF Nos. 28 & 29). Defendant again appealed (*Id*., ECF No. 30) and on May 4, 2022, the denial was affirmed (*Id*., ECF No. 33). The current Motion for Reduction of Sentence Under First Step Act, 18 U.S.C. § 3582 (c)(1)(A) (ECF No. 175) followed less than one year later.[5]

In his Motion, Defendant raises four grounds for release. First, he claims Covid-19 variants pose a threat that cannot be controlled in prison. (ECF Nos. 175 at 3 & 191 at 4–9.) Next, Defendant asserts his sentence is unusually long and effectively constitutes a life sentence. (*Id*.) Defendant additionally claims he is the only person his "mentally-ailing" father trusts, therefore "family circumstances" constitute a valid basis for release. (*Id*.) Finally, Defendant claims his rehabilitation warrants release. (*Id*.) Although Defendant filed his Motion prior to the effective date for Amendments to the Policy Statement regarding § 3582 Motions, he addresses the most recent provisions in his submissions and the Government has responded accordingly. As such, the Motion will be analyzed under the amendments that took effect on November 1, 2023.

## II.     STANDARD OF REVIEW

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Prior to bringing a motion for reduced sentence before the

---

[5] On June 5, 2024, this matter was reassigned to the undersigned. (ECF No. 194.)

3

court, defendants first "must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond." *Id*. "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also Raia*, 954 F.3d at 595 (same). At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if, after finding "extraordinary and compelling reasons warrant a reduction, the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Balter*, Crim. No. 93-536, 2024 U.S. Dist. LEXIS 84825, at *5 (D.N.J. May 9, 2024) (cleaned up). As such, "[c]ompassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 U.S. App. LEXIS 16162, at *3–4 (3d Cir. June 27, 2023). "[T]he defendant bears the burden of proving compelling and extraordinary reasons exist to justify compassionate release . . . by a preponderance of the evidence." *United States v. Mims*, Case No. 2:19-cr-00527, 2021 U.S. Dist. LEXIS 169385, at *5 (D.N.J. Sept. 7, 2021) (cleaned up).

In cases such as here where the movant is a pro se litigant, the court must "liberally construe" Defendant's filings "with an eye toward their substance rather than their form." *United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

### III. DISCUSSION

As a preliminary matter, the Court finds Defendant has satisfied the exhaustion requirements for bringing the instant Motion. (ECF No. 189 at 4, Exs. C, D.)

As to the second step of the analysis, recent changes to the Sentencing Guidelines Policy Statements now provide prisoners with additional avenues for seeking relief under 18 U.S.C. § 3852(c)(1)(A). *United States v. Shore*, Criminal No. 07-66, 2023 U.S. Dist. LEXIS 197911, at *9–10 (E.D. Pa. Nov. 2, 2023); *see also* U.S. Sentencing Commission, "Adopted Amendments," Apr. 27, 2023, available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 ("[T]he amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act.").

Instructed by these amendments, this Court shall address each of Defendant's claims in turn.

    A.    **Asserted Grounds for § 3582 Relief**

        1.  **Covid-19 Variants**

Defendant first argues that despite any precautions the prison has taken with respect to the spread of Covid-19, he remains at risk for contracting one of the variants, such as "BA2/omicrom and other[s]." (ECF No. 175 at 4.) Citing to Covid statistics from 2021, Defendant claims no one can predict "if" the new variants will affect the prison or "how [they will] affect [the prison population] as a whole[.]" (*Id*.) Defendant is concerned the limited space and overcrowding at FCI Allenwood prevents the BOP from being able to follow all the Center for Disease Control's recommendations regarding Covid-19 and coupled with his high blood pressure, diabetes and high cholesterol, states "his life is in danger[.]" (*Id*. at 4–5.) These concerns are reiterated in Defendant's Reply. (ECF No. 191 at 6–7.)

The amended Policy Statement regarding reductions in sentence on the basis of an infectious disease provides:

> (b) Extraordinary and Compelling Reasons.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> * * * *
>
> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); *and* (iii) such risk cannot be adequately mitigated in a timely manner.

U.S. SENT'G GUIDELINES MANUAL § lBl.l3(1)(D), p.s. (Nov. 2023) (emphasis added).

According to medical records submitted by the Government, Defendant was vaccinated against Covid-19 and its variants on February 25, 2021,[6] March 24, 2021, December 16, 2021 and December 19, 2023. (ECF No. 189, Ex. E at 5, 6.)

As has been determined when assessing an argument similar to that presented by Defendant here . . .

> [T]he Delta variant's spread through the United States fails to change the prior results [of denying compassionate release on the basis of Covid]. Defendant proffers no evidence demonstrating that he is at serious risk of contracting the disease at FCI Allenwood. Furthermore, Defendant fails to establish that an infection by this newer strain of the coronavirus creates an outsized risk to his health.

---

[6] Although the BOP medical records pertaining to Defendant do not specify a year for administration of the first vaccine, the Court takes judicial notice of the fact that the vaccine was not available in February 2020.

*United States v. Jefferson*, Criminal No. 18-165, 2021 U.S. Dist. LEXIS 220303, at *2 (D.N.J. Nov. 15, 2021).

In fact, BOP statistics show that as of July 23, 2024, of the total inmate population of 2,670 at FCI Allenwood, 1,785 prisoners have been fully inoculated and there are currently no open cases of Covid-19. "*Inmate Covid-19 Data*," FED'L BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 24, 2024). Defendant's speculative concerns regarding the unknown potential for contracting one of the Covid variants at sometime in the future is unfounded. *See United States v. Reddick*, Crim. No. 11-00293, 2022 U.S. Dist. LEXIS 205994, at *7 (D.N.J. Nov. 14, 2022) ("[N]ow that COVID-19 vaccinations are available to inmates in the Bureau of Prisons, compassionate release motions on the basis of COVID-19 . . . generally lack merit."); *United States v. Roche*, Crim. No. 96-114-12, 2022 U.S. Dist. LEXIS 191582, at *11 (D.N.J. Oct. 20, 2022) ("[Defendant] has not shown that his circumstances warrant release. He has failed to show that he is at a uniquely high risk for grave illness from COVID-19 given his vaccination status and the availability of boosters, nor has he proven that there currently exists an actual, non-speculative risk of exposure at FCI Schuylkill given its high vaccination rate and low incidence of COVID-19 within the facility.").

In this case, Defendant has not demonstrated FCI Allenwood is at imminent risk of being affected by "an ongoing outbreak of infectious disease." U.S.S.G. § lB1.13(b)(1)(D). Nor has he shown that "due to personal health risk factors and custodial status," he is "at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease" and that any such risk "cannot be adequately mitigated in a timely manner." *Id*. Accordingly, Defendant's claim regarding the danger Covid variants pose to his health and wellbeing is without merit.

## 2. "Effective Life Sentence"

Defendant next seeks relief on the basis that he effectively received a life sentence when an aggregate term of 1,380 months' imprisonment was imposed on him. (ECF No. 175 at 6.) In support of this claim, Defendant relies on § 403(a) of the First Step Act[7] for the proposition that he would not have received the same consecutive mandatory minimums under 18 U.S.C. § 924(c) if § 403(a) had been in existence at the time he was sentenced. (*Id.*)

The current Policy Statement for § 3582 provides for an "unusually long sentence" as follows:

> (b) Extraordinary and Compelling Reasons.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> * * * *
>
> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § lBl.l3(b)(6).

In this case, Defendant has been in federal custody on these charges since his arrest on November 29, 2006 and therefore meets the first requirement. (PSR at 1; ECF No. 175 at 8.) Acknowledging § 403(a) shall not apply retroactively,[8] Defendant nevertheless urges the Court to

---

[7] First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat 5194, § 403(a).

[8] *See Herrera-Genao v. United States*, Civ. Action No. 12-6119, 2020 U.S. Dist. LEXIS 125362, at *8 (D.N.J. July 16, 2020) ("[Section] 403(a), by its plain terms, does not apply retroactively to [a defendant], who had already been sentenced when the First Step Act was enacted. [T]he First Step Act intentionally subjected any defendant who already had any sentence imposed to the original § 924(c) mandatory minimum, even if their sentence was subsequently modified.") (cleaned up).

find that when considered in conjunction with his claim regarding Covid and an assessment of the § 3553 factors, his "effective life sentence" claim warrants relief. (*Id*. at 7–8.) However, because application of § 403(a) would not result in a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," Defendant cannot prevail. U.S.S.G. § lBl.l3(b)(6). This is so because the mandatory minimums to be imposed under 18 U.S.C. § 924(c)(i), (ii) are as applicable to Defendant today as they were in 2008. Moreover, the terror Defendant wreaked on his many victims by use of intimidation and threats and while brandishing a firearm during the course of six bank robberies[9] throughout southern New Jersey, warrants the sentence imposed under any reasonable interpretation of the statute. Further, for reasons discussed below, Defendant cannot overcome the § 3553 hurdle, as there is absolutely nothing with respect to his individualized circumstances that would justify a reduction.

Notwithstanding the foregoing, Defendant also argues his sentence "was not due to his culpability, but due to a trial penalty by rejecting a plea bargain and exercising his right to a jury trial." (ECF No. 175 at 8.) Aside from the fact that the record is replete with evidence of Defendant's extensive culpability, the Court notes that Co-Defendant Steven Gantt previously raised this exact "vindictive prosecution" issue in a consolidated direct appeal involving Defendant which was rejected by the Third Circuit. (ECF No. 162-1 at 9–10.) This Court finds no basis upon which to rule otherwise here.[10]

---

[9] Defendant was also involved in an armed bank robbery that occurred in York, Pennsylvania during the relevant time period. (ECF No. 48 ¶ 10(i); PSR ¶ 2(i).)

[10] The Court further notes that this issue was raised at the time of Mr. Taylor's sentencing, when Judge Kugler explained as follows:

> I believe you [Attorney Renner] were here in court when [AUSA] Mr. Smith, before the superseding indictment was returned, explained this all to the defendants in the courtroom,

9

### 3. Family Circumstances

Next, Defendant maintains his family circumstances warrant relief under § 3582. (ECF Nos. 175 at 9 & 191 at 11–12.) Specifically, Defendant says his father, Julius Taylor, suffers from mental health issues and the only person he "trusts," is Defendant. (*Id*.) Defendant further claims "the only person that can soothe [his father] is his son" and that he frequently calls his father from prison to encourage him to take his daily medications. (*Id*.)

The Policy Statement governing "Family Circumstances" provides as follows:

> (b) Extraordinary and Compelling Reasons.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (3) Family circumstances of the defendant.
>
> > (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
> > (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> > (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
> > (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

---

that if he sought and received a superseding indictment from the grand jury and if these defendants were convicted, the effect that would have on the potential sentences that they would receive should they be convicted. And apparently offered one last opportunity for them to enter into some kind of plea agreement before the superseding indictment was returned. And your client understood all that because I asked him if he understood all that, and he said he did and he wanted to exercise his Sixth Amendment right to a trial, which we gave him twice. That's another difference [between Taylor and Johnson], the charge that was brought against him. (ECF No. 156 at 8–9.)

U.S.S.G. § 1B1.13(b)(3).

Defendant's allegations invoke Subsection (b)(3)(C).  Currently, Julius Taylor has a court-appointed guardian identified as Debra G. Speyer, Esquire.  (ECF No. 175-3 at 3.)  Attorney Speyer submitted a letter in support of Defendant's request, writing in part: "[I]n order for his father Julius Taylor to continue to reside in the community, he will require Kevin Taylor, the only person he trusts as his twenty/four [sic] hour caregiver." (*Id*.)  Otherwise, Defendant's father would have to be placed in a nursing home, where Ms. Speyer believes he would "fare extremely poorly." (*Id*.)

The Government argues Defendant's violent history should prevent him from being a caretaker for any elderly individual.  (ECF No. 189 at 12.)  The Government further argues prison phone records show Defendant has never had a phone call with his father while incarcerated such that his arguments here otherwise are not credible.  (*Id*., Ex. H.)  Last, the Government claims Julius Taylor has several other family members living nearby, therefore Defendant is not "the only" person available to care for Defendant's father.  (*Id.*, Ex. I.)  Defendant rebuts these claims, asserting the phone records utilized by the Government are not accurate and there are no family members who are on good terms with his father and live nearby.  (ECF No. 191 at 5.)[11]

Regardless of the accuracy of the prison phone records or status of relationships between family members or their proximity to the Defendant's father, Defendant has not shown his alleged "family circumstance" is compelling and extraordinary.  Julius Taylor currently has a legal guardian, who serves as "*the guardian of the <u>person</u> and estate of Julius Taylor*." (ECF No. 175-3

---

[11] To the extent Defendant concludes the phone calls he made to his mother and an individual named Paula Basham are proof that he was "worry[ing] about his father [sic] mental ill [sic] condition[,]" the Court cannot construe this information as such proof.  Defendant had repeated telephone conversations with numerous other people throughout that same period of time; there is no evidence of record regarding the nature of any phone calls Defendant made or received while incarcerated.  (Gov't Ex. H.)

11

at 4) (emphasis added). Further, although it might not be Ms. Speyer's or Defendant's "preferred" means of care for Julius Taylor, a nursing home is equipped to handle situations such as this and therefore constitutes another fully viable option. Section 1B1.13(b)(3)(C) does not provide a potential basis for relief premised on preference—it does so based on necessity. As such, Defendant has not established himself as "the only available caregiver for the parent" pursuant to U.S.S.G. § 1B1.13(b)(3)(C). This, coupled with the fact that Defendant cannot overcome the § 3353 factors discussed below, precludes relief.

### 4. Rehabilitation

Last, Defendant relies upon his rehabilitative efforts while in prison as support for the instant Motion. (ECF No. 175 at 10–12.) In particular, he claims the courses he has taken, in conjunction with his work for UNICOR (where he "is one of the most important in the organization as a clerk"), have "transform[ed] his character into an acceptable and productive human being." (*Id*. at 10.)

> The operative Policy Statement regarding this issue states as follows:
>
>> Rehabilitation of the Defendant.--Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).

Here, presumably cognizant of the fact that rehabilitation alone is not a sufficient basis for granting compassionate release, Defendant maintains his "capability could be on [sic] extraordinary and compelling reason in combination with his health condition and family circumstances toward a sentence reduction or immediate release." (ECF No. 175 at 12.)

The primary focus of Defendant's rehabilitation claim is on his work at UNICOR over the past three years, which involves a recycling program that "has a big impact toward the [climate change] goal of congress[.]" (*Id*. at 11.) To that end, he provides a Memorandum from UNICOR Production Controller J. Hodish, which states Defendant is hard working, never misses work, always shows up on time, and is "now one of the best clerks in the business group." (ECF No. 178 at 2.)

However, Defendant has also accrued several disciplinary infractions while incarcerated, including threats of bodily harm, failure to follow orders, and assault. (Gov't Ex. B at 1.) Additionally, Defendant's most recent Individualized Needs Plan prepared by the prison indicates he still requires training in the areas of anger/hostility, antisocial behavior, cognition/criminal thinking, victim impact and substance abuse, and that he failed to "follow previous recommendations of last review." (Gov't Ex. A at 2–3.)

Although Defendant's most recent achievements while in prison are positive, they are also expected of any individual serving time for commission of a crime. *See United States v. Bledsoe*, No. 22-2022, 2022 U.S. App. LEXIS 23011, at *3–4 (3d Cir. Aug. 18, 2022) (a "[defendant's] claimed efforts in furtherance of rehabilitation, while commendable, are 'expected,' they are, standing alone, neither 'extraordinary' nor 'compelling' for purposes of the compassionate-release standard[.]"); *see also USA v. Stewart*, No. 22-2770, 2023 U.S. App. LEXIS 30219, at *6 (3d Cir. Nov. 14, 2023) ("[R]ehabilitation cannot 'by itself' serve as an extraordinary and compelling reason for [a defendant's] release.") (citing U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t)).

In view of the foregoing, Defendant's rehabilitation argument lacks substance and absent any other circumstances that could constitute extraordinary or compelling reasons for a reduction, does not warrant relief.

### 5. "Other Reasons"

Construing Defendant's pro se motion liberally as it must, the Court shall assess the "Other Reasons" provision of the recently enacted Policy Statement to U.S.S.G. § 1B1.13. Through this provision, a court may consider "any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Paragraphs (1) through (4) provide for: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; and, (4) instances in which the defendant was a victim of abuse while in custody. U.S.S.G. § 1B1.13(b)(1)–(4). Defendant herein has presented arguments relating to his health in the context of Covid risks, as well as family circumstances and rehabilitation. The Court finds as follows:

### a. Medical Circumstances

According to prison medical records submitted by the Government, Defendant has been diagnosed with Gastro-esophageal Reflux Disease (GERD), Obesity, mild Thrombocytopenia, Type 2 Diabetes, Hyperlipidemia, and Hypertension. (Gov't Ex. E at 3.) In his Reply, Defendant claims he "suffer[s] from several medical conditions that require long term or specialized medical care without which Taylor is at risk of serious deterioration in health or death that is not being provided in a timely adequate manner." (ECF No. 191 at 7.)

Defendant has been prescribed medications for his medical conditions; however, he is not always compliant with the prescribed regimen. (*Id.* at 1, 3.) Notwithstanding, as of December 2023, Defendant reported "doing well" and denied having any concerning symptoms. (*Id.* at 1.) Although Defendant's medical conditions do not appear to be affecting his quality of life, they do exist and are therefore considered in conjunction with the other circumstances presented. Upon doing so, the Court finds Defendant has not shown he has any medical condition that cannot be

effectively managed by the BOP. *See United States v. Williams*, Criminal Action No. 11-00421, 2022 U.S. Dist. LEXIS 57409, at *5–6 (D.N.J. March 29, 2022) (denying a defendant's request for compassionate release on the basis of medical condition because the defendant was being routinely seen by medical staff and "the [] medication that the facility provide[d] effectively manage[d] any symptoms."). As such, Defendant's current medical issues do not support his cause for release.

### b. Age

Inasmuch as Defendant turned 60 years old in January 2024, he has not satisfied the age requirement of "at least 65 years old[,]" provided for in U.S.S.G. § 1B1.13(b)(2). (ECF No. 56 at 5.)[12]s  Accordingly, this factor does not support his cause for relief.

### c. Family Circumstances

As discussed above, Defendant has not established himself as "the only available caregiver for the parent" pursuant to U.S.S.G. § 1B1.13(b)(3)(C). Accordingly, this factor does not support his cause for relief.

### d. Victim of Abuse

Defendant does not allege he was a victim of abuse while in custody pursuant to U.S.S.G. § 1B1.13(b)(4).

### e. Sum of Circumstances

As discussed above, the Policy Statement to U.S.S.G. § 1B1.13 permits a court to consider "***any other circumstances or combination of circumstances*** that, when considered by themselves

---

[12] Although the PSR indicated Defendant has used two different years of birth (1964 and 1965), neither would satisfy the age requirement under U.S.S.G. § 1B1.13(b)(5). (PSR at 2.)

or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5) (emphasis added). Here, in addition to his Covid/medical status and family circumstances claims, Defendant cites his achievements in prison as support for release. (ECF Nos. 175 at 10–12.)  For the reasons discussed above, the extent of Defendant's largely recent rehabilitative efforts are offset by his disciplinary infractions.  Accordingly, release is not warranted on the basis of U.S.S.G. § 1B1.13(b)(5).

### B. Further Analysis

Since the Court has determined Defendant failed to establish extraordinary and compelling reasons for a reduction in sentence, the Court need not  assess the § 3553 factors or Sentencing Commission Policy.  *See United States v. Pray*, Criminal Action No. 14-55-1, 2022 U.S. Dist. LEXIS 124497, at * 2 (E.D. Pa. July 14, 2022) (inmate's sentence may only be reduced if *all three* criteria are met: (1) a finding of extraordinary and compelling reasons; (2) § 3553 factors warrant reduction; and (3) a reduction "is consistent with applicable policy statements issued by the Sentencing Commission.") (emphasis added); *see also United States v. Castillo*, Criminal Action No. 12-cr-230-3, 2024 U.S. Dist. LEXIS 20260, at *6–7 (E.D. Pa. Feb. 5, 2024) ("Only if a defendant's circumstances qualify as 'extraordinary and compelling' will the court look to Section 3553(a) factors to determine whether, at the court's discretion, a sentence reduction is warranted.") (citing 18 U.S.C. § 3582(c)(1)(A)). However, for the sake of thoroughness, the Court shall assess the § 3355 factors[13] by revisiting the information available at sentencing in conjunction with the information provided by both Defendant and the Government for purposes of this Motion.

---

[13] "Individualized circumstances" are set forth in 18 USCS § 3553, which provides in relevant part as follows:
> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set

First, it is undisputed that the crimes committed were numerous and serious; employees and customers of several banks were subdued through the use of force, intimidation and violence while Defendant brandished a firearm and assisted his co-defendants in stealing more than $120,000. (PSR ¶ 15.) Several of the victims sustained physical injuries and/or required psychological counseling after the traumatic events they experienced at the hands of Defendant. (PSR ¶¶ 44–48.) There is also no dispute that Defendant has a lengthy criminal history in both State and Federal courts involving multiple theft, robbery, drug, burglary and assault offenses, beginning at age 15 through age 41, when he committed the instant offenses. (PSR ¶¶ 124–164.) Further, every time Defendant was granted parole on his State Court offenses, he subsequently committed other crimes, resulting in successive revocations. (PSR ¶¶ 124-64.) This record does not instill confidence of any reasaonble degree that Defendant would not immediately reoffend if released.

The Court does not find the 17 years of incarceration to date have served as just punishment, have afforded adequate deterrence, or have worked to promote respect for the

---

forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
>
> \* \* \* \*
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a)(1), (a)(2), (a)(6).

law by Defendant. Moreover, because Defendant's projected release date is currently August 7, 2105, the granting of this motion would substantially undermine Judge Kugler's originally imposed sentence, which was unequivocally intended to reflect the seriousness of the offenses and thereafter affirmed. Because of the violent nature of his crimes and the fact that Defendant's subsequent progress while in prison has been less than stellar, he could pose a risk to the community if released. The Court further finds Defendant has not taken advantage of all the educational and vocational opportunities available to him; it wasn't until 2021 that he seriously began engaging in prison courses and steady employment with UNICOR. Until that time, his course participation was sporadic and he continued to commit disciplinary infractions. (Gov't Ex. B at 2.)

Next, although Defendant does have chronic health issues, they are being effectively treated by medical personnel at the prison.

Last, § 3553(a)(6) provides for the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. At the time of sentencing, counsel for Defendant argued a sentencing disparity existed between himself and Co-defendant Johnson. Judge Kugler found as follows:

> I'm going to deny the defendant's request on two grounds. Number one, the co-defendant was simply charged differently than this defendant was. This defendant had full notice of what was going to happen should he continue on with his invocation of his Sixth Amendment right to trial, that there would be additional charges brought, that these were weapons offenses, that these were consecutive sentences and that he would be facing a significantly higher sentence than Mr. Johnson.
>
> Secondly, the government's correct, you look at <u>Dowdy</u> and all the other cases, they're not similarly situated because he was cooperating. It takes it completely out of this statutory factor. And it wasn't just his testimony that was important, it was his cooperation before the trial that led the government to focus on this defendant. They didn't even know who this guy was and probably wouldn't have gotten to him without Mr. Johnson's help pretrial. When you look at <u>Dowdy</u> and

>the other cases, and that's the point I think the Third Circuit is trying to make, is that with a cooperator it's a much different situation. You are not dealing with sentence disparities as contemplated under the guidelines. So for all those reasons, I'm going to deny the application in this matter.

(ECF No. 156 at 15–16.)

This Court agrees that because of Co-Defendant Johnson's cooperation, it is impossible to compare the sentence he received with that of Defendant.

For these reasons, in concluding the § 3582 analysis, I find a reduction would be wholly inconsistent with applicable Policy Statements issued by the Sentencing Commission.

Thus, the Court finds Defendant has not met his burden of demonstrating by a preponderance of evidence that extraordinary and compelling reasons exist for compassionate release.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release is denied. An appropriate Order follows.

DATED: July 31, 2024              /s/ Christine P. O'Hearn
                                                                   **Christine P. O'Hearn**
                                                                   **United States District Judge**